## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

**DEBORAH LAUFER,**          :

                    :

        **Plaintiff,**          :

**v.**          :          **Case No:  1:20-cv-00467-LJV**

                    :

**WEBBS MOTEL, INC.,**          :

                    :

        **Defendant.**          :

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Attorneys For Plaintiff

By:  /s/Jonathan E. Staehr
Jonathan E. Staehr, Esq.
Of Counsel to Thomas B. Bacon, P.A.
336 Harris Hill Road, Ste. 18
Williamsville, New York 14221
Phone No. (716) 631.7250
Fax No. (716) 929.3333
jstaehr@roadrunner.com

## I.       Introduction

Plaintiff, is a Florida resident and disabled person within the meaning of the Americans With Disabilities Act, 42 U.S.C. Sections 12181, et seq. ("ADA") and relies on a wheelchair or cane to ambulate and is vision impaired. Defendant books rooms for its hotel through an online reservations service operated through multiple websites.  (Hereinafter "websites", "online reservations service" or "ORS".) Laufer Affid., para. 6, Exhibit A attached hereto.  The purpose of this ORS is so that Defendant can reach out and market to persons all over the country, including Florida, in their own homes, to solicit their patronage, provide them with information so that they can make a meaningful choice in planning trips, and in some instances, book a room at the hotel.  As such, the Defendant's ORS is required to comply with the requirements of 28 C.F.R. Section 36.302(e)(1) (hereinafter the "Regulation"), by identifying and allowing for booking of accessible rooms and providing accurate and sufficient information as to whether or not all the features at the hotel are accessible. Prior to the filing of this lawsuit, on multiple occasions, Plaintiff reviewed the ORS for Defendant's hotel and found that it did not comply with the Regulation.  Laufer Affid., para. 6. Plaintiff therefore filed the instant action for injunctive relief pursuant to the ADA. Plaintiff also has a system to ensure that she properly maintains standing.  *Id*. at para. 8. She maintains a list of all hotels she has sued over  ORS violations. *Id.* She goes through and updates this list constantly. *Id.* With respect to each hotel she sues or has sued, she revisits the hotel's ORS shortly after the complaint is filed.  She also records the date when the ORS is required to be complaint and then revisits it. By this system, Plaintiff has already revisited the ORS for this hotel after the complaint was filed. *Id.*

Defendant filed its motion arguing that plaintiff lacks standing because she lives too far

1

away from the hotel and cannot have a cause of action unless she intends to travel to the hotel. (Hereinafter "physical nexus" requirement.).  Defendant's Motion is entirely devoid of any authority in support of its proposition. In fact, Defendant's theory has been widely rejected.

## II.    The Applicable Standard

In instances where the jurisdictional challenge is under Fed. R. Civ. P. 12(b)(1), the issue is whether "the jurisdictional dispute is interwoven with the underlying merits" of the dispute. *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013). In that instance, the District Court must apply the standards of Rule 56 (applicable to summary judgment) or to 12(b)(6) or leave that issue for trial. *Id*. In the case at bar, Defendant's challenges to Plaintiff's right to injunctive relief are inextricably intertwined with the merits of Plaintiff's claims for relief, which are based on 42 U.S.C. Sections 12182 and 12188. Thus, Defendant's challenges go to the very heart of the merits of Plaintiff's federal cause of action. For that reason, a credibility determination is inappropriate, as the Court must consider the motion in accordance with the standards of Fed. R. Civ. P. 56 (because affidavits are being considered). Under Rule 56, the Court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. v. Am. Piles, Inc.*, 138 F.3d 81, 87 (2d Cir. 1998); *Kinney v. Artist & Brand Agency LLC*, 2015 U.S. Dist. LEXIS 160465, ** 33-34 (S.D. N.Y. 2015).

## III.    Defendant's Theory Has Been Widely Rejected

Defendant fails to cite even a single case that actually supports its position that a plaintiff must intend to book a room at the hotel to have standing.  Defendant ignores the overwhelming body of caselaw that holds  that the law omits any such requirement.  In *Parks v. Richard*, 2020

2

U.S. Dist. Lexis 86790 (M.D. Fla. 2020), one court rejected the defendant's argument that the

plaintiff needed to intend to book a room at the hotel. The court held that the:

> ADA claim is based upon [defendant's] website failing to identify the accessible features
> of the motel and its rooms, in violation of 28 C.F.R. § 36.302(e)(1)(ii). Therefore, the
> relevant 'future injury' inquiry relates to the motel's website and reservation system, rather
> than the motel's physical property." [Citation omitted.] While Parks may have never
> visited the motel, he visited its website and several third-party sites.

*Id*. at *7.  In *Kennedy v. Gold Sun Hospitality, LLC*, 8:18-cv-842-T-33CPT, DE 23, at pp.  30-31,

(M.D. Fla. June 18, 2018), another court rejected a physical nexus argument, holding that the

plaintiff's injury occurred in comfort of her own home when she visited defendant's

discriminatory hotel website. In *Kennedy v. Swagath Hospitality, LLC*, 0:19-cv-60583-DPG, DE

27 (S.D. Fla. 1/2/2020), another court rejected the defendant's  physical nexus argument, stating:

> Plaintiff alleges that (1) she visited Defendant's website to ascertain whether it met the
> requirements of 28 C.F.R. Section 36.302(e), (2) she intends to return to the website to
> test it for compliance and/or to reserve a guest room, and (3) Defendant's failure to
> comply with the Americans with Disabilities Act ("ADA") is ongoing and harmful to
> her..... Based on these allegations, the Court finds that Plaintiff has sufficiently alleged an
> injury-in-fact and an intent to the return to the website in the future.

In *Kennedy v. WGA*, 2:19-cv-0095-RWS, DE 16, p. 9 (N.D. Ga. 11/5/2019), another court

rejected the physical nexus argument, stating:

> [Defendant]'s argument [] centers on whether [plaintiff] suffered a concrete and
> particularized injury only from visiting [the hotel's] website and not the physical
> premises. ....[V]isiting the website suffices.... [A] plaintiff's inability to fully and
> effectively use an establishment's website constitutes an injury-in-fact..... [T]he Court
> finds that [plaintiff] has sufficiently alleged an injury-in-fact as a result of visiting
> Lakeside's deficient website under 28 C.F.R. § 36.302(e)(1)(ii). She visited the website to
> review and assess the accessible features of the Lakeside Inn.  Because the website lacked
> the requisite information, she could not determine whether the physical location met her
> accessibility needs. Lakeside thus deprived her of the services otherwise available to the
> general public. These allegations are sufficient to establish a past injury for the purposes
> of standing. As with the past injury, the Court has previously held in a different context
> that alleging an intent to return to a website that threatens continued exposure to

discrimination is sufficient to establish a threat of future injury. [Citation omitted.] Given the finding above that the alleged injury stems from [plaintiff's] visiting Lakeside's deficient website, the Court finds that the relevant inquiry is whether she is likely to return to the website again.

*Id*. at 7, 8, 9-10, 12.

In *Poschmann v. Fountain TN, LLC*, 2019 U.S. Dist. Lexis 159417, **4-6 (M.D. Fla. 2019), another court rejected the physical nexus argument, holding that the plaintiff's ADA claim was based on the discriminatory website and, "[t]herefore, the relevant "future injury" inquiry relates to the motel's website and reservation system, rather than the motel's physical property." In *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. Lexis 87457. *8 (S.D. Fla. 2018), another court recognized the plaintiff's motive for returning to the discriminatory website as either " to determine whether the Hotel is accessible to him, and, if so, to reserve a room at the Hotel **or** to test the Hotel's Website reservation system for its compliance with the ADA." (Emphasis added.) By inclusion of the word "or" the court held that motive to review the website solely to test it was sufficient and that intending to book a room is not required.  In *Kennedy v. Nila Investments, LLC*, 2:19-cv-90-LGW-BWC, DE 34 (S.D. Ga. 7/1/20), another court granted default judgment after an evidentiary hearing, finding that the plaintiff suffered discrimination when she visited the non-compliant ORS. The court additionally found that the plaintiff had standing because she visited the ORS both before and after the lawsuit was filed "for the purpose of assessing the accessibility features of the property and to ascertain whether those sites met her accessibility needs as well as the requirements of 28 C.F.R. § 36.302(e)(1)." *Id.* at p. 5. Other courts rejected the argument that intent to book a room or visit the hotel is required. *Kennedy v. New Yorker Hotel, Miami, LLC*, 0:18-cv-62897-WPD, DE 34 (6/6/19);  *Kennedy v. Murnane, et al.*, 0:18-cv-63086-WPD, DE 10 (S.D. Fla. 3/5/19); *Kennedy*

4

*v. Galleon Resort Condominium Assn, Inc., et al.*, 19-cv-62421-CMA, DE 52 (S.D. Fla. 1/28/20).

Numerous other courts have held that a disabled person suffers injury-in-fact when they visit a hotel's discriminatory online reservations service. *See  Kennedy v. Sai Ram Hotels, LLC*, 2019 U.S. Dist. LEXIS 80111, *4-6 (M.D. Fla. 5/13/19), *citing Honeywell v. Harihar Inc*., 2018 U.S. Dist. LEXIS 203740,(M.D. Fla. Dec. 3, 2018); *Kennedy v. Floridal Hotel, Inc.*,  2018 U.S. Dist. LEXIS 207984, at *9 (S.D. Fla. 2018);  *Poschmann v. Liberty Inn Motel, LLC*, 2:18-cv-14348, ECF No. 17 at 4-5 (S.D. Fla. Jan. 23, 2019); *Brooke v. Hotel Inv. Grp., Inc.*, 2017 U.S. Dist Lexis 150717, * 6 (D. Ariz. 2017);  *Brooke v. Regency Inn-Downey, LLC*, 2017 U.S. Dist. Lexis 150716 (D. Ariz. 2017). This injury occurs in the comfort of the plaintiff's own home. *Gold Sun,* at pp.  30-31 (plaintiff's injury occurred in comfort of her own home when she visited defendant's discriminatory hotel website).

In in *Gonzalez v. Bahar Corp*., 2019 U.S. Dist. Lexis 58567, *7 (E.D.N.Y. 2019), one court in the Eastern District of New York stated that the issue is the plaintiff's intent to return to the website (ORS), rather than the physical property. The court stated: "Here, [plaintiff's] desire to return to the website is especially plausible because this action can be completed by a few keystrokes, without cost, and at any time. Unlike the plaintiffs in *Lujan* [*v. Defenders of Wildlife*, 504 U.S. 538 (1992)], [plaintiff] is not alleging an intent to return to a physical location, let alone a distant one."

Numerous additional cases support the proposition that viewing a discriminatory commercial website constitutes injury-in-fact in the context of vision impairment based claims. *See, e.g. Carroll v. Fedfinancial Fed. Credit Union*, 324 F. Supp. 3d 658, 664 (E.D. Va. 2018); *Access Now, Inc. v. Otter Prods., LLC*, 280 F. Supp. 3d 287, 294 (D. Mass. 2017); *Jones v.*

5

*Piedmont Plus Fed. Credit Union*, No. 1:17-CV-5214- RWS, 2018 WL 4694362, at *1 (N.D. Ga.

Sept. 26, 2018); *Jones v. Family First Credit Union,* No. 1:17-CV-4592-SCJ, 2018 WL 5045231,

at *4 (N.D. Ga. Aug. 6, 2018). For example, in *Camacho v. Vanderbilt Univ.*, 2019 U.S. Dist.

Lexis 209202, *30 (S.D.N.Y. 2019), one court rejected the notion that the plaintiff's possible

visit to the subject property was at issue, holding:

> Plaintiff has claimed that he was denied access to the Website, not Defendant's physical
> location itself. Thus, Defendant need not have shown that he intended to "return" to
> Defendant's school in Nashville, Tennessee. He is only required to have established a
> reasonable inference that he intended to return to the Website...

Defendant's reference to the four part test (proximity of residence to the business, past

patronage, plans to return, frequency of travel near the defendant) (hereinafter "Proximity Test")

is also unavailing because numerous courts have held it has either limited or no applicability to

hotel website cases.  *See, e.g. Camacho*,  2019 U.S. Dist. Lexis 209202, *30 (holding that cases

applying Proximity Test to discrimination at physical properties are irrelevant to website

discrimination claims); *see also Parks,* 2020 U.S. Dist. Lexis 86790 at *6;  *Gold Sun Hospitality,*

*LLC*, 8:18-cv-842, DE 23, pp. 30-31;  *Kennedy v. Sai Ram Hotels*, 2019 U.S. Dist. Lexis 80111,

* 9 (M.D. Fla. 2019).  Another court has held that the Proximity test not applicable to

commercial websites (in vision impaired discrimination) because (1) website cases do not

involve physical locations; and (2) no travel is required. *Gniewkowski, et al v. Lettuce Entertain*

*You Enterprises, Inc., et al.*, 251 F. Supp.3d 908, 920 (W.D. Pa. 2017).  "The relevant 'future

injury' inquiry relates to the [hotel's] website and reservation system, rather than the [hotel's]

physical property. *Sai Ram*, 2019 U.S. Dist. Lexis 80111, at *11.[1]

---

[1]The proximity test is also not applicable in the context of hotels because hotels are, by
nature, established to accommodate travelers from afar. *Parks*, 2020 U.S. Dist. Lexis 86790 *6;

## IV.    Testers Have Standing

Testers have standing under Title III of the ADA. *See Colo. Cross-Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014), citing *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1333-34 (11th Cir. 2013); *Harty v. Simon Property Group, L.P.*, 428 Fed. Appx. 69, 71 (2d Cir. 6/29/2011)(Summary Order)(holding that plaintiff's intent to return as a tester contributes to satisfying his pleading requirements). As such, the disabled person's motive is entirely irrelevant because all that matters is whether they encountered discrimination as defined by the plain words the Statute.  *Marod*, *passim*.  Moreover, as the Eleventh Circuit explained, "[i]t is not unprecedented in this country for advocacy groups and individual members of advocacy groups to find it necessary to file a long trail of lawsuits in federal courts to enforce legal and civil rights." *Marod*, 733 F.3d at 1326. The entire purpose of the ADA and its fee shifting provision was to eradicate discrimination against disabled persons by encouraging individuals to act as private attorneys general to actively enforce the provisions of these civil rights statutes. *See  Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) ("All of these civil rights laws depend heavily upon private enforcement..."); *Bruce v. City of Gainesville*, 177 F.3d 949, 952 (11th Cir. 1999)(applying to the ADA and stating "the enforcement of civil rights statutes by plaintiffs as private attorneys general is an important part of the underlying policy behind the law.").  Indeed, if it were not for this Plaintiff, Defendant would be free to

_____

*Bodley v. Plaza Management Corp.*, 550 F.Supp.2d 1085, (D. Ariz. 2008);  *D'Lil v. Best Western Encina Lodge & Suites*, 415 F. Supp.2d 1048, 1056 (C.D. Cal. 2006); *Access 4 All, Inc. V. Wintergreen Commercial P'ship*, 2005 WL 2989307, at *4 (N.D. Tex. Nov. 7, 2005); *Access 4 All, Inc. v. 539 Absecon Blvd.*, 2006 WL 1804578, at *3 (D.N.J. 2006).  Indeed, at least one court has ruled that a plaintiff who lives **too close** to a hotel has no standing to sue for compliance. *See Access 4 All, Inc. v. Thirty East 30th Street, LLC*, 1:04-Civ-3683, DE 36, at 17 (S.D. N.Y. 12/11/06).

7

discriminate.

## V.     The Rules Of Statutory Construction Prohibit The Imposition Of A Physical Nexus Requirement

"Statutory interpretation always begins with the plain language of the statute,' which [the court] consider[s] in 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009); *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009).  If the language is unambiguous, no further inquiry is necessary. *Clark v. Astrue*, 602 F.3d 140, 147 (2d Cir. 2010). "Our duty is to say what statutory language means, not what it should mean, and not what it would mean if we had drafted it." *Marod Supermarkets, Inc.*, 733 F.3d at 1333-34 (addressing tester standing), citing *T-Mobile South, LLC v. City of Milton, Ga.*, 728 F.3d 1274, 2013 WL 4750549, at *10 (11th Cir. 2013). "We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable.". *Marod*, 733 F.3d at 1334, citing  *Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008)*.

More significantly, if such additional restrictive language is found elsewhere in the Statute, but not in the provisions governing the case at bar, such exclusion is dispositive.

"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987); *see also Patel v. McElroy*, 143 F.3d 56, 60 (2d Cir 1997).

Plaintiff's claims are based on the following: 42 U.S.C. Section 12182(a) provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. Section 12182(b)(2)(A) expands on the definitions of the above subsection to include:

> a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities....

42 U.S.C. Section 12182(b)(2)(A)(ii). This latter subsection is the subject of regulations promulgated by the Department Of Justice ("DOJ").[2] Specifically, the DOJ promulgated  28 C.F.R. Section 36.302(e)(1)(hereinafter "Regulation"), which provides:

> (1)Reservations made by places of lodging. A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party -
> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms;
> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs;
> (iii) Ensure that accessible guest rooms are held for use by individuals with disabilities until all other guest rooms of that type have been rented and the accessible room requested is the only remaining room of that type;
> (iv) Reserve, upon request, accessible guest rooms or specific types of guest rooms and ensure that the guest rooms requested are blocked and removed from all reservations systems; and
> (v) Guarantee that the specific accessible guest room reserved through its reservations service is held for the reserving customer, regardless of whether a specific room is held in response to reservations made by others.

Lastly, 42 U.S.C. Section 12188(a) provides:

> The remedies and procedures set forth in section 2000a–3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter...

The Statute and Regulation are directly on point and unambiguously spell out all the

---

[2]The DOJ promulgated 28 C.F.R. 36.302 to carry out the provisions of the ADA. *Poschmann v. Coral Reef of Key Biscayne Developers, Inc.*, 2018 U.S. Dist. LEXIS 87457 *6 (S.D. Fla. May 23, 2018).

9

elements of a cause of action.  A website is a "service" of a place of public accommodation.

*Haynes v. Dunkin Donuts, LLC*, 741 Fed. Appx. 752, 754 (11th Cir. 2018)(unpublished

opinion)(describing a commercial website as a "service" of a place of public accommodation);

*Nat'l Fed'n Of The Blind v. Target Corp*., 452 F. Supp. 946, 953 (N.D. Cal. 2006)(same).   42

U.S.C. Section 12182(a) clearly spells out a complete cause of action as follows: "No individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of the ...

services ... of any place of public accommodation..." Because the websites are a "service", all

that is required is that a disabled person be deprived of full and equal enjoyment of this

"service".[3]  Once that occurs, all the elements are satisfied to establish a cause of action.

Conspicuously absent from the Regulation or the Statute is any requirement that the disabled

person must additionally intend to be a customer or, in this case, book a room and stay at the

hotel as a requirement for a cause of action.

> Additionally and alternatively, 42 U.S.C. Section 12188(a) provides that "any person who

is being subjected to discrimination on the basis of disability in violation of this subchapter..."

has the right to sue. Because a non-compliant ORS constitutes "discrimination" under 42 U.S.C.

Section 12182(b)(2)(A)(ii), the right of relief belongs to "any person" who encounters it.

> The rules of statutory construction mandate a finding that a physical nexus requirement

can NOT be imposed because any language expressing this requirement is conspicuously missing

from the above cited Regulation and Statutory subsections. As set forth in the following cases,

the imposition of substantially similar requirements have been extensively considered and

---

[3]An online reservations system may also be characterized as a  privilege or advantage,
also referenced in Subsection 12182(a).

rejected because they were noted to be present in other statutes or subsections, but absent from the applicable sections or subsections governing the claims before the courts reviewing them.

In *Marod*, the Eleventh Circuit held that a disabled tester has standing to pursue a Title III ADA case for violations of 42 U.S.C. Section 12182. Generally, it held that a plaintiff's motive and intent are entirely irrelevant and that there is no requirement that they be a client or customer or a bona fide customer. In this regard, the Eleventh Circuit relied on Supreme Court cases and applied the rules of statutory construction.

Both *Marod*, 733 F.3d at 1333, and *PGA Tour v. Martin*, 532 U.S. 661, 678-79 (2001), held that an ADA plaintiff suing under 42 U.S.C. Section 12182(a) does not have to be a "client or customer" of the defendant. In both cases, the Eleventh Circuit and Supreme Court noted that a **different** subsection of the same statute contained a "client or customer" requirement that was not present in the plain language of Subsection 12182(a). Therefore, both courts held the requirement could not be applied. Because the "client or customer" language was present in one subsection, but missing from the subsection that governed, the requirement could not be imposed. In *PGA Tour*, 532 U.S. at 678-79, the defendant had argued that the plaintiff had no standing to sue unless he was a "client or customer" of the place of public accommodation. The Court rejected this notion. As the Court observed, the Statute's "client or customer" limitation was set forth in only one Subsection of the Statute, but missing from others that governed the case before it. Specifically, Section 12182(b)(1)(A)(iv) contained the "clients or customers" limitation. However, the Subsection at issue in *PGA Tour*, namely 12182(a)[4] **did NOT** contain this limiting language. Therefore, the Court stated that: "clause (iv) is not literally applicable to

---

[4]Subsection 12182(a) is the same Subsection that governs the instant action.

11

Title III's general rule prohibiting discrimination against disabled individuals. Title III's broad

general rule contains no express "clients or customers" limitation..." *PGA Tour*, 532 U.S. at 679

(citing Subsection 12182(a)). Therefore, as the Supreme Court observed, limiting language

contained in one Subsection of Title III cannot be applied to other Subsections of the same statute

where that language is missing.  This "client or customer" analysis regarding was similarly

applied by the *Marod* Court when it held that testers have standing, that they do not need to be a

client or customer, and that their motive is irrelevant. 733 F.3d at 1333-34.

    In *Marod*, the Eleventh Circuit considered other cases applying other civil rights statutes.

Among these was *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982):

> The Supreme Court concluded that a black tester who was misinformed about the availability of a rental property had alleged sufficient injury-in-fact to support standing to sue under § 804(d) of the FHA. *Id.* at 374, 102 S. Ct. at 1121-22. The plaintiff-tester in Havens Realty never intended to rent the apartment; rather, his sole purpose was to determine whether the defendant engaged in unlawful practices. *Id.*
>     In considering the tester's standing, the Supreme Court in Havens Realty explained that the "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Id.* at 373, 102 S. Ct. at 1121  (alterations adopted) (quoting *Warth v. Seldin,* 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975)); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 1148 n.3, 35 L. Ed. 2d 536 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."). The statutory language of the relevant FHA provision, § 804(d), was therefore critical to the Supreme Court's decision. *Havens Realty,* 455 U.S. at 373, 102 S. Ct. at 1121.

*Marod*, 733 F.3d at 1330. The Court also noted:

> The Supreme Court therefore concluded that § 804(d) "establishes an enforceable right to **truthful information** concerning the availability of housing" and "[a] tester who has been the object of a misrepresentation made unlawful under § 804(d) has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions." [Citation omitted.]
>     The Supreme Court admonished "[t]hat the tester may have approached the real estate agent fully expecting that he would receive false information, and **without any**

> **intention of buying or renting a home**, does not negate the simple fact of injury within the meaning of § 804(d)." *Id.* at 374; 102 S. Ct. at 1121. The Supreme Court explained that "[w]hereas Congress, in prohibiting discriminatory refusals to sell or rent in § 804(a) of the Act, *42 U.S.C. § 3604(a)*, required that there be a 'bona fide offer' to rent or purchase, Congress plainly omitted any such requirement insofar as it banned discriminatory representations in § 804(d)." *Havens Realty,* 455 U.S. at 374; 102 S. Ct. at 1122.

*Marod*, 733 F.3d at 1330-31 (emphasis added).

The case at bar is substantially similar to *Havens Realty*. Under *Havens Realty*, the plain language of the statute gave a right of action to a civil rights tester who encountered **discriminatory  information** about an apartment **even though they did not intend to rent the apartment**. In other words, it was not necessary that the person intended to rent or visit the physical location. Rather, encountering the discriminatory information was sufficient.

In *Marod*, the Court also noted that other anti-discrimination statutes required that a plaintiff have "bona fide" status. *Marod*, 733 F.3d at 1333. Because the bona fide requirement was contained in other statutes, but not included in the applicable provisions of 42 U.S.C. 12182, its requirement could not be imposed. *Id*. In *Havens Realty*, the Supreme Court applied the same rule of statutory construction, noting that a requirement that a plaintiff be a "bona fide patron" was included in one subsection of the applicable statute, but missing from the subsection that applied to the case before it. Therefore, the bona fide requirement did not apply. *Havens Realty*, 455 U.S. at 374. In *Marod*, the Court stated:

> These examples illustrate that Congress has said so expressly when it wants to limit the class of people protected by anti-discrimination statutes to only clients or customers or to people of bona fide status. But Congress expressed no such limitation in the parts of Title III that are relevant to Plaintiff Houston's lawsuit. This absence of legislative language restricts our interpretation, as we are "not allowed to add or subtract words from a statute."

733 F.3d at 1333-34.

The ability or inability to obtain information in violation of a statute was also recognized as an actionable injury by the Supreme Court in *Federal Election Commission v. Akins*, 524 U.S. 11, 20-25 (1998), which ruled that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III. In this regard the Supreme Court stated:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute. *Public Citizen v. Department of Justice*, 491 U.S. 440, 449, 105 L. Ed. 2d 377, 109 S. Ct. 2558 (1989) (failure to obtain information subject to disclosure under Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

524 U.S. at 21.  In *Ragin v. Harry Maclowe Real Estate* Co., 6 F.3d 898 (2d Cir. 1993), the Second Circuit held that individuals had standing to sue under the Fair Housing Act for the defendant's placement of display advertising for residential apartments in the newspaper because all the models portrayed in the ad were white. This even though the plaintiff testers had no intention of renting an apartment. *Id*. at 904. In this regard, the Second Circuit followed *Havens Realty* and stated as follows:

> There is no significant difference between the statutorily recognized injury suffered by the tester in *Havens Realty* and the injury suffered by the Ragins and the Cuylers, who were confronted by advertisements indicating a preference based on race. [citation omitted.]  Given the private attorney general provision in section 813(a) of the Act and the Supreme Court's holding in *Havens Realty*, the district court was constrained to find that the individual plaintiffs had standing to bring this action in federal court.

*Id*.

To the extent there is any room for doubt, there is in fact **another** subsection of the Statute which **DOES** contain language imposing a physical nexus requirement. 42 U.S.C.

14

Section 12182(b)(2)(A)(i) prohibits:

> "the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities ***from*** fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations..." (Emphasis added.)

In that Subsection, the word "from" is critical because its insertion in the Subsection means that a disabled person's encounter with discriminatory eligibility criteria by itself does not give rise to a cause of action unless and until that criteria additionally prevents them **"from"** full and equal access to goods or services. This word, however, is conspicuously absent from either the Statute's Subsections or the Regulation that govern online reservations systems.

Thus, any imposition of the requirement that plaintiff intend to stay at defendant's hotel would violate the rules of statutory construction, defy the plain and unambiguous language of the statute and regulation, transplant restrictive requirements from other subsections, and violate the principles set forth in *Ragin*, *PGA Tour, Cardoza-Fonseca,* and *Havens Realty*.

The Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) supports this conclusion. In *Spokeo*, the Supreme Court held that improper information which violated the Fair Credit Reporting Act did not, by itself, constitute injury[5].  However, the *Spokeo* Court specifically recognized the existence of statutes which provide that the dissemination of improper information constitutes an injury with nothing more required, stating:

> Just as the common law permitted suit in such instances, the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional

---

[5]It should be noted that the Fair Credit Reporting Act was intended to protect one class of persons, debtors, from incorrect information provided to a different class of persons, creditors. By contrast, in anti-discrimination statutes such as the ADA, recipients of the information and the class of protected persons are the same.

harm beyond the one Congress has identified. *See Federal Election Comm'n v. Akins*, 524 U. S. 11, 20-25, [] (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury in fact to satisfy Article III); *Public Citizen v. Department of Justice*, 491 U. S. 440, 449, [] (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue").

*Spokeo,* 136 S.Ct. At 1549-50.  In the *Akins* decision referenced by *Spokeo*, the Supreme Court,

specifically referenced *Havens Realty* as follows:

> Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publically disclosed pursuant to a statute..... *See also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-374[] (1982) (deprivation of information about housing availability constitutes "specific injury" permitting standing).

*Akins*, 524 U.S. at 21.  Thus, the *Spokeo* Court neither overturned nor narrowed *Havens Realty*,

but instead acknowledged the body of law to which *Havens Realty* belongs.[6]  Indeed, the

concurring and dissenting opinions in *Spokeo* both expressly recognized *Havens Realty*. *Spokeo,*

136 S.Ct. at 1553, 1555 (Thomas J., Concurring)(Ginsburg, J. Dissenting).

Defendant's cite to *Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th

Cir. 2019), is unavailing. In all that case, the defendant was a credit union and was not available

to the public. The court specifically stated that it was not considering "the rights generally of

people with disabilities to sue for Internet-based harms under the ADA". 912 F.2d at 653.

## VI.      Plaintiff Has Established Intent To Return

Various courts have held that status a tester " plausibly increases the likelihood that he or

she will visit the [defendant's] website again to test its ADA compliance." *Kennedy v. Sai Ram*

---

[6]In *Marod*, passim, this Circuit Court found substantial similarities between the ADA and the statute at issue in *Havens Realty* with regard to the issue of standing and the lack of any motive requirement of the individual plaintiff.

*Hotels*, 2019 U.S. Dist. Lexis 80111, * 9 (M.D. Fla. 2019), *citing Gold Sun Hospitality, LLC*,

No. 8:18-cv-842-T-33CPT, DE 23, pp. 31-32. *See also Access 4 All, Inc. v. Absecon Hospitality

Corp.*, 2006 WL 3109966, *17 (D.N.J. 2006). *Marod*, 733 F.3d at 1336 (explaining that

plaintiff's status as a tester indicated that he would revisit the property many times and therefore

tended to show a real and immediate threat of future injury). In cases such as *Gonzalez*,  2019

U.S. Dist. Lexis 58567, at *8, the court's reference to the fact that the plaintiff had family in the

area of the hotel pertained to the analysis of the plausibility whether the plaintiff would return to

the hotel's website.  Critically, in the instant case, the Plaintiff has a system whereby she makes

sure she visits the ORS in each and every case shortly after the respective complaint is filed, then

again when the defendant is required to bring its ORS into compliance with the law. *Id*. Thus, she

insures that she either will again suffer injury if the defendant does not comply with the law, or

will benefit if the defendant does indeed comply. Under *Parks*.,  2020 U.S. Dist. Lexis 86790, at

*7, such a system of rechecking suffices to establish standing. Moreover, not only did this

Plaintiff visit the hotel's discriminatory online reservations system multiple times before she

filed suit (2.8.20, 2.10.20, 2.11.20, 2.12.20, 2.13.20 and 4.6.20), but also she has visited it again

since filing suit (5.17.20), pursuant to her system. Laufer Affid., paras. 6, 8. Thus, Laufer proved

to be true to her word when she averred that she intended to return to the websites in the near

future. At least two courts have held that post-complaint visits establish standing. *See  Payne v.

Boston Market Corp*., E.D. N.C. 5:12-cv-354, DE 16 (3/12/13); *Kennedy v. Omega Gas*, 9:17-cv-

80103-RLR, DE 60, pp. 6-7 (S.D. Fla. 8/30/17).

**VII.    Plaintiff Does Intend To Visit New York**

      Even though such is not necessary for purposes of standing, Plaintiff does indeed intend

to visit New York and travel throughtout the entire state, including the Chautauqua area, as soon as the Covid crisis abates. Laufer Affid., para. 5. However, because this Defendant and so many others fail to comply with the law, Plaintiff lacks the information she requires to make a meaningful choice. *Id.*

## VIII.   Defendant's Argument Regarding Compliance Must Fail

Defendant deliberately attempts to mislead this Court by claiming that its website located at www.webbsworld.com is compliant. Webb Affid. DE 4-3, para. 7. However, this is self serving and an attempt by a lay witness to provide an expert opinion, a violation of Fed. R. Evid. 701. Self serving testimony by a lay witness is insufficient as speculative. *Lieber v. Macy's West, Inc.*, 80 F.Supp.2d 1065, 1078 (N.D. Cal. 1999). At para. 8 of this affidavit, Defendant refers to an unsworn letter by a third party in support of its claim that the site is compliant. This is hearsay and therefore inadmissable under Fed. R. Civ. P. 802. *See also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Most significantly, Defendant is attempting to mislead this Court when it claims that its website is compliant. Even if acceptable as evidence, the date on the letter of Elizabeth Gleason (DE 4-4, p. 2), indicates that defendant made changes to its website *after it was sued and in response to the lawsuit*. This means that Defendant is attempting to moot this case without invoking the mootness doctrine.

"A defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 190 (2000). As the United States Supreme Court held:

18

> [V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot. ...A controversy may remain to be settled in such circumstances, ...e.g., a dispute over the legality of the challenged practices. ...The defendant is free to return to his old ways. This, together with a public interest in having the legality of the practices settled, militates against a mootness conclusion.

*United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953)(citations omitted). According to the "general rule" a mootness defense should "rarely" succeed.  *See Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 998 (7th Cir. 2002)("The general rule is that voluntary cessation of a challenged practice rarely moots a federal case.");  *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)(same);  *Friends of The Earth*, 528 U.S. at 189 ("a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 66-67 (1987) ("Mootness doctrine ... protects plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.' "). Put another way, the standard for determining whether a defendant's voluntary cessation of illegal behavior moots a case is "stringent".  *Friends Of The Earth*, 528 U.S. at 189.  *Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 347 (S.D.N.Y. 2009); *Disabled in Action of Metro. N.Y. v. Trump Int'l Hotel & Tower*, 2003 U.S. Dist. LEXIS 5145, ** 37-38 (S.D.N.Y. 2003).

A defendant's assertion that it has no intention of reinstating the challenged practice is unavailing.  The Supreme Court called such claims of repentance "predicable".  *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 66-67 (1987). *See also Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 71-72  (1983); *W. T. Grant*, 345 U.S. at 632 n.5 ("It is the duty of

the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit . . . .").

Several courts have stated that ADA discrimination cases involving websites cannot be mooted.  Even if this Court were to hold that Defendant's ORS is presently compliant, it still cannot hold Plaintiff's claims to be moot. In *Haynes v. Hooters*, 893 F.3d 781, 784 (11th Cir. 2018), the Eleventh Circuit warned that an ADA case involving website discrimination cannot be mooted, stating:

> Relatedly, Haynes requested in his complaint that the district court direct Hooters to continually update and maintain its website to ensure that it remains fully accessible. Accordingly, even if Hooters' website becomes ADA compliant, Haynes seeks injunctive relief requiring Hooters to maintain the website in compliant condition. Thus, ... , there is still a live controversy about whether Haynes can receive an injunction to force Hooters to make its website ADA compliant or to maintain it as such. Therefore, this case is not moot.

(Emphasis supplied.)  At least three other courts have held that a defendant cannot moot an ADA case simply by making its website compliant.  *See Nat'l Fed'n of the Blind v. Target Corp.*, 582 F. Supp. 2d 1185 (N.D. Cal. Sept. 28, 2007) (cannot moot because of the "potential for new pages").  One court held that a hotel cannot moot a discrimination case involving hotel online reservations discrimination.  *Brooke v. A-Ventures, LLC*, 2017 U.S. Dist. LEXIS 193259 ** 6-7 (D. Ariz. Nov. 22, 2017).  In *Brooke*, the defendant had made assurances of future compliance similar to those made by the instant Defendant in the case at bar. The court rejected these claims on the basis that:

> "Similarly here, all defendant has done is change its website and adopt a new internal policy, both of which could easily be changed in the future. Defendant has not met its heavy burden of showing that it is absolutely clear that its wrongful behavior could not reasonably be expected to recur. This case is not moot."

In *Parks v. Richard dba Shipwreck Motel*, 2:20-cv-00227-SPC-NPM, DE 28 (M.D.Fla. 07/21/20), Exhibit B attached hereto, one court recently rejected an argument involving the defendant's attempt to moot a hotel ORS case. There, the court held that, under *Hooters*, a website case cannot be mooted because the plaintiff always has the right to injunctive relief requiring that the defendant maintain the site in compliance with the law. *Id*. at 5.

In the context of the ADA, physical property and website cases stand apart from one another. ADA website cases are distinguishable from other ADA cases in which district courts grant mootness dismissals with greater readiness. In this regard, a prior opinion rendered by another court in this Circuit sheds light:

> "In ADA cases involving architectural barriers remedied by structural changes, some courts have found that the conduct reasonably would not recur because the defendants would have no reason to alter the structural changes back." *Scott v. Cash To Go, Inc.*, No. 6:13-cv-142-Orl-37KRS, 2013 U.S. Dist. LEXIS 59980, 2013 WL 1786640, at *2 n.2 (M.D. Fla. Apr. 26, 2013) (citing *Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 99 (D.D.C. 2007) ("The alleged discrimination cannot reasonably be expected to recur because 'structural modifications ... are unlikely to be altered in the future.'" (quoting *Indep. Living Res. v. Or. Arena Corp.*, 982 F. Supp. 698, 774 (D. Or. 1997)))). "Such cases can be contrasted with those where ADA non-compliance flows from an easily changeable policy." Id. (citing *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1189 (11th Cir. 2007) ("If we conclude that her claims are moot, then should MRN determine that future litigation is unlikely, it may well calculate that its new policy is no longer the preferable course of action and revert to the old policy it prefers and apparently believes to be legal.")); *see also Young v. D.C. Hous. Auth.*, 31 F. Supp. 3d 90, 97 (D.D.C. 2014) ("'[G]iven the ease with which defendants could stop providing captioning, we simply cannot say that they have made an affirmative showing that the continuation of [**17] their alleged ADA violations is "nearly impossible."'" (quoting *Feldman v. Pro Football, Inc.*, 419 F. App'x 381 (4th Cir. 2011))).
>
> Courts also reject mootness challenges where the claimed ADA-corrective changes "consist[] largely of promises that [the defendant] will fulfill in the future." *Gropper*, 12 F. Supp. 3d [664] at 670 [(S.D. N.Y. 2014)] (emphasis in original).

*De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016). *See also Houston v. 7-Eleven, Inc.*, 2014 U.S. Dist. LEXIS 12209, at **5-6 (S.D. Fla. 1/31/2014)

(Scola, J.)(emphasis added)(emphasising that ADA cases involving structural barriers are a unique subset of the voluntary cessation doctrine because they are permanent in nature and not likely to be undone);  *Scott v. Cash To Go, Inc*., 2013 U.S. Dist. LEXIS 59980, n. 2 (M.D. Fla. Apr. 26, 2013)(recognizing the importance in assessing mootness whether or not remediations were structural and therefore permanent).

With respect to mootness in the context of the ADA, website cases starkly contrast claims involving structural elements. Whereas structural elements are regarded by courts as being permanent in nature and not likely to be undone, website cases are fluid. Online reservations systems are updated on a daily basis, with changes in pricing and room availability. Information to the host's own website and third party providers is exchanged and updated constantly. Websites are also generally completely revised on a periodic basis.  Accordingly, because future conduct is at issue, the case cannot be moot. *600 Broadway Partners,* 175 F.Supp.3d at 201, *citing Gropper*, 12 F. Supp. 3d at 670.

Moreover, adherence to the Regulation's requirements are not limited to the provision of information and identification and booking of of accessible rooms. It additionally includes the necessity that the accessible rooms be reserved and blocked so that only disabled persons may book them. 28 C.F.R. Section 36.302(e)(1)(iii)(iv) and (v). All the Defendant has to do is lapse in its affirmative obligations of continuing and future compliance.  In *National Alliance For Accessibility, Inc. v. McDonalds Corp.*, 8:12-cv-01365, p. 11-12 (M.D. Fla. 12/06/13), a court denied a defendant's motion for summary judgment based on mootness. The court held that because the specifications required by the ADA evolve, an entity which fails to comply with these evolving requirements cannot moot a case by waiting until a lawsuit is filed before it

22

complies. Defendants in such cases, are guilty of an "ongoing indifference" to the ADA's

changing requirements. In this regard, the Court noted the revisions to the ADA that occurred

with the promulgation of the 2010 ADA Standards. The court held that a defendant's:

> "duty to comply is a continuing duty....The absence of complaints by disabled individuals
> does not completely explain Defendants' non-compliance with the ongoing requirements
> of the ADA. At this point any such entity has had a substantial opportunity to familiarize
> itself with the provisions of the ADA, as they evolve, and to comply with those
> provisions.
> ...
> Defendant's implementation of a new policy and removal of the architectural barriers
> does not eliminate the possibility of future violation, when the requirements of the ADA
> have been well publicized for many years. The requirements of the ADA have not
> remained fixed, and it is incumbent on Defendants to take note of evolving requirements.
> In this case, Defendants took no action to comply with the current requirements until after
> this case was filed. The risk remains that Defendants will resume the challenged conduct
> after this case is dismissed.

The court further held that: "While some aspects of this case may have become moot, the

Court finds that, at a minimum, the scope of an injunction directed to maintenance and future

compliance remains at issue." *Id.* p. 12. *See also Moore v. Dollar Tree Stores, Inc.*, 85 F. Supp.

3d 1176, (E.D. Cal. 2015) (even after defendant fixed the operational pressure of exterior doors,

evidence was disputed as to whether they reasonably could be expected to lapse into

noncompliance); *Heard v. Statue Cruises LLC*, 2017 U.S. Dist. LEXIS 98665 (S.D.N.Y. June 26,

2017)(a defendant cannot moot a case because the defendant could simply cease to implement

the measures to ensure continued compliance in the future). As in *Heard*, the Defendant is under

a continuing, future and affirmative obligation to ensure that its daily booking system, system of

blocking and reserving rooms for the disabled, and posting required information on its ORS

continue to comply with the Regulation.

In light of these authorities, Defendant fails to meet its formidable burden of proving mootness. First, the Defendant fails to meet its evidentiary burden. One court rejected a mootness defense where the defendant had failed to provide sufficient evidence to prove its claim of mootness. *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D. N.Y. 2018). Here, the Defendant adduces only self serving lay evidence and hearsay evidence, both inadmissable. Even if admissible, these bare bones assertions that the hotel is accessible and the website compliant are insufficient. The Department Of Justice, which promulgated the Regulation, issued a Guideline stating that: "even when information is provided it often is found to be incorrect upon arrival." Part 36 Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities, p. 77, Exhibit C attached hereto. The DOJ Guidelines provide that a hotel's ORS must indicate whether conditions at the hotel are accessible. If the hotel is built in compliance with the applicable ADA Standards For Accessible Design, then it suffices to identify such features as "accessible." *Id*., p. 78. However, for features that do not comply with the applicable ADA Standards, the ORS must identify those features and describe their measurements or conditions. *Id*. Defendant has provided no evidence or expert testimony that its website accurately describes the conditions at the hotel, whether they comply or deviate from the applicable ADA standards set forth in either the ADAAGs or 2010 ADA standards for Accessible Design. The Defendant's own website indicates that the hotel was first built in 1968, but that 26 new rooms were added in 1994, thus doubling its size to 52 rooms. *See* Exhibit D, p. 2. Thus, at least half the hotel was built prior to the ADA and half afterward, yet Defendant offers no reliable testimony as to whether and what conditions are in compliance with the

applicable ADA architectural standards.[7] More specifically, Defendant fails to adduce any evidence that its website accurately depicts the hotel's actual conditions in comparison to the applicable standards. For example, the 1991 ADA Standard requires that a hotel with 52 rooms have 3 designated accessible rooms, one with a roll-in shower. Defendant fails to adduce any evidence of whether it complies with this requirement or whether its website accurately reflects this issue.

Fourth, the Defendant fails even claim, let alone offer any evidence, testimony or otherwise, that it now complies with the remaining requirements of the Regulation. 28 C.F.R. 36.302(e)(1)(iii), (iv) and (v)  require that the accessible guest rooms at a hotel be blocked for, or held for use by, disabled persons rather than the general public.  On these requirements, Defendant is entirely silent.

## IX.   Conclusion

For the foregoing reasons, Defendant's Motion must be denied.

Respectfully submitted,

By:  /s/Jonathan E. Staehr
Jonathan E. Staehr, Esq.
Of Counsel to Thomas B. Bacon, P.A.
336 Harris Hill Road, Ste. 18
Williamsville, New York 14221
Phone No. (716) 631.7250
Fax No. (716) 929.3333
jstaehr@roadrunner.com

---

[7]The 1991 ADA Standards can be found at https://www.access-board.gov/guidelines-and-standards/buildings-and-sites/about-the-ada-standards/background/adaag and set forth the specifications to which the new portion of the hotel is required to adhere.

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2020, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss and attached Exhibits pursuant to F.R.C.P. 41(a)(1)(A)(i) with the Clerk of the Court by using the CM/ECF System, which sent notice of such filings to all parties.

/s/ Jonathan E. Staehr
Jonathan E. Staehr, Esq.